No. 14315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN RE THE MARRIAGE OF
DALE A. MADSON,

                    Petitioner and Appellant,

        and

SHIRLEY E. MADSON,

                    Respondent and Respondent.

---

Appeal from:   District Court of the Thirteenth Judicial District,
               Honorable Leonard H. Langen, Judge presiding.

Counsel of Record:

    For Appellant:

        Sandall and Cavan, Billings, Montana
        John Cavan argued, Billings, Montana

    For Respondent:

        Berger, Anderson, Sinclair & Murphy, Billings, Montana
        Richard Anderson argued, Billings, Montana

---

                            Submitted:  November 15, 1978

                            Decided: DEC 1 3 1978

Filed: DEC 1 3 1978

Thomas J. Kearney
                                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Petitioner Dale A. Madson brought this action in the district court of the Thirteenth Judicial District, Yellowstone County, seeking a dissolution of his marriage to respondent, Shirley E. Madson. Trial was had before the court sitting without a jury. The district court entered its findings and conclusions on February 28, 1978, and its judgment and order decreeing the dissolution, property division, custody award, and award of maintenance and child support on March 7, 1978. Petitioner appeals from the award of maintenance set forth in the judgment and decree.

Dale, age 50 at the time of the decree, and Shirley, then age 48, were married August 22, 1950. They have five children: Bruce 26, Mark 24, Jeff 22, Peter 19, and Marilyn 16. Peter and Marilyn were living at home at the time of the dissolution and respondent was given custody of Marilyn. Petitioner and respondent have been separated since January 30, 1970.

Petitioner is vice-president and manages the Billings operation of the Colborn School Supply Company, a closely-held corporation. Petitioner also owns the largest single block of stock in that corporation (23% of the outstanding shares). Petitioner in addition is president of M & L Realty Company which owns the buildings housing the Billings, Montana and Grand Forks, North Dakota operations of Colborn. Petitioner's salary as an officer of Colborn is approximately $53,000.00 annually. Petitioner also holds insurance policies with cash values of approximately $18,000.00 and participates in a profit sharing plan of which his share is approximately $21,000.00 Petitioner's stock holdings in Colborn included in the marital estate were valued by the district court at $78,590.00 (542 shares at $145.00 per share). There was

however, conflicting testimony on the value of these shares. The court valued petitioner's stock holdings in the realty company, included in the marital estate, at $21,150.00 (141 shares at $150.00 per share). In addition, petitioner holds demand notes from the two companies totaling $18,150.00 and has a 50% interest in a Mazatlan, Mexico condominium valued at $10,000.00.

It was testified at trial that petitioner contributed approximately $18,000.00 in 1976 to support respondent and the two children at home. It was further testified that petitioner over the course of the seven and one-half year separation, contributed approximately $132,000.00 to the support of his family. Petitioner also testified that during this time period his net worth was increasing.

Respondent has not worked for remuneration during the 27 years of the marriage. She was at the time of the marriage in 1950 engaged in nurses training but terminated when she was married. Since her marriage she has devoted her time and energy to raising her family in part due to the wishes of petitioner. She testified at trial that she possesses no technical skills and that she had been advised not to return to her nurses training because of its physical and mental demands. Respondent testified the only work she had ever done for remuneration was as a maid and babysitting in high school. Respondent testified she suffers from an ailment which can be surgically corrected, and occasionally from sciatica, and varicose veins. Respondent also indicated a willingness to take training to prepare herself for remunerative work.

Respondent admitted at trial she often aids her older children financially and gives them gifts. She does little socially and travels infrequently.

-3-

In its findings the district court determined the marital estate to have a value of $238,762.00. This consisted of the family home in Billings and its furnishings, valued at $85,000.00, Colborn stock held by petitioner (the court excluded stock devised to petitioner by his father during the separation from respondent), realty company stock (excluding shares devised to petitioner during the separation), life insurance cash values, interests in the pension and profit sharing plans of Colborn, demand notes and petitioner's interest in the condominium in Mexico. The court awarded respondent $120,000.00 as her equitable share to be made up of the home, its furnishings and $35,000.00 cash.

The district court, after making detailed findings concerning the value of Colborn and the realty company stock and dividing the marital assets, found respondent had no employment or income history. The court found the respondent suffered from physical ailments, some of which could be corrected, and that respondent was willing to undergo vocational training and could become employable. The court then made findings concerning the income of petitioner and determined he could afford to pay $12,000.00 annually in maintenance until respondent remarries or dies. The court provided for an increase in maintenance should the cost of living increase as determined by federal government statstics.

The district court entered its decree and judgment based on its findings and conclusions on March 7, 1978. Petitioner appeals from that portion of the judgment setting the maintenance award.

Petitioner contends the district court abused its discretion by not making specific findings on respondent's reasonable needs before awarding maintenance. In conjunction

-4-

with this contention petitioner argues the district court also abused its discretion by not requiring non-income producing property (the family home) awarded to respondent to be converted into income-producing property, and by not requiring respondent, who it found could become employable, to seek training and employment before it determined and awarded maintenance. Our review of the record, however, reveals no abuse of discretion; thus we affirm the judgment of the district court.

The criteria by which this Court measures alleged abuses of discretion has been recited many times. We will not alter the judgment of a trial court sitting without a jury, particularly in dissolution matters, unless the record demonstrates the district court acted arbitrarily, without a reasonable basis, resulting in substantial injustice. In Re the Marriage of Caprice (1978), ____Mont.____, 585 P.2d 641, 35 St.Rep. 1460, 1464; Jerome v. Jerome (1978), ____Mont.____, 574 P.2d 997, 35 St.Rep. 148. It is true the district court here did not specifically enumerate what it considered to be respondent's reasonable needs. However, it did find respondent was a 48 year-old woman, with health problems, who had no employment history, and was without practical means of support. The court heard uncontradicted testimony concerning the amounts petitioner had voluntarily contributed to the support of the family during the seven year separation. The court also heard uncontradicted testimony concerning amounts respondent spent in 1976 for living expenses. The credibility of the witnesses is for the trial court to determine and not this Court. Easton v. Easton (1978), ____Mont.____, 574 P.2d 989, 35 St.Rep. 123. After a review of the record we do not find the district court abused its discretion by not making a specific finding of reasonable needs.

-5-

The petitioner has also argued that in this case section 48-322, R.C.M. 1947, requires the non-income producing property awarded to respondent be sold and the proceeds invested to produce income, and requires respondent be ordered to seek job training to become employed before maintenance may be properly awarded. Petitioner has cited no authority supporting this position and we are unable to find any. Moreover, jurisdictions interpreting the identical section have stated the criteria of lack of sufficient property for reasonable needs and inability to support through appropriate employment are relative. Lindsay v. Lindsay (1977), 115 Ariz. 322, 565 P.2d 199, 203; Casper v. Casper (Ky. 1974), 510 S.W.2d 253, 255; Sharp v. Sharp (Ky. 1974), 516 S.W.2d 875, 877; Colley v. Colley (Ky. 1970), 460 S.W.2d 821, 827. The appropriate construction of the language of section 48-322(1)(a) and (b), R.C.M. 1947, is whether the spouse seeking maintenance lacks sufficient property and is unable to support herself through appropriate employment according to the standard of living established during the marriage. Lindsay, supra; Casper, supra; Colley, supra. Evidence was introduced at trial indicating the standard of living enjoyed by the respondent during recent years, but no evidence was introduced as to respondent's earning capabilities or the income producing potential of the real property awarded to respondent. We recognize there are public policy considerations behind rehabilitative spousal maintenance awards which, under appropriate circumstances, may give incentive to the spouse receiving maintenance to procure job skills so as to become selfsufficient. However, this public policy must be balanced with some:

> "realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the

-6-

marriage, <u>especially when a marriage of long-term</u> <u>duration is involved and the employment history</u> <u>shows a long-term absence of the spouse from the</u> <u>labor market with lack of a presently existing employ</u> <u>ment skill.</u>"  <u>Lindsay</u>, 565 P.2d at 205.  (Emphasis added.)

It is noteworthy that in this case we have a husband who has been generous in the support given to his wife during their separation.  Our conclusion here is that the needs of his wife have been established, principally through his generosity, and his income warrants the district court's award of maintenance, especially in the light of the income tax impact on a high earner such as the husband.

We find no abuse of discretion in the findings, conclusions and judgment of the district court, and affirm its decision.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-