No. 84-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE MARRIAGE OF

LINDEN EDWARDS,

Petitioner and Appellant,

and

MARILYN EDWARDS,

Respondent and Respondent.

APPEAL FROM: District Court of Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keller & German; Ann C. German, Libby, Montana

For Respondent:

Douglas & Bostock; William A. Douglas, Libby, Montana

Submitted on Briefs: Feb. 22, 1985

Decided: May 1, 1985

Filed: MAY - 1 1985

Ethel M. Harrison

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Husband appeals from a decree of dissolution entered in the District Court of the Nineteenth Judicial District, Lincoln County. Appellant claims it was an abuse of discretion to award the wife indefinite monthly alimony in addition to a disproportionate property share when the wife is not disabled. On appeal, the husband also claims that the court erroneously considered the husband's living arrangements, thus compensating the wife for his "marital misconduct."

We affirm the lower court judgment. The court considered the statutory factors under the Uniform Marriage and Divorce Act regarding property division and maintenance and referred to the factors in its findings of fact and conclusions of law. The record shows the employment of conscientious judgment in arriving at a substantially just result. Where the record fails to show an arbitrary exercise of discretion and the ruling is not clearly erroneous, we will not overturn a judgment.

Appellant brings this appeal to our Court upon the following issues:

1. Did the lower court abuse its discretion in awarding the wife "lifetime" alimony of $500 monthly where she got the family residence, he got the property he had acquired through inheritance, and she was not disabled?

2. Did the court erroneously consider marital misconduct in dividing the marital property and awarding maintenance?

Linden and Marilyn Edwards were married at Coeur d'Alene, Idaho, on March 7, 1959. Linden adopted her two children and the couple had five more children of their own. At Linden's insistence, Marilyn stayed home and occupied

herself as wife, mother and housekeeper. As the breadwinner, Linden had a varied career including logging and mining. For a number of years he has worked at ASARCO, now as a supervisor making $33,000 per year. Parties resided the last twenty-three years of their marriage in the home in Libby. In 1980 they purchased acreage at Troy, Montana, with an inheritance from Linden's mother.

After the parties separated in August 1983, Marilyn secured part-time seasonal employment performing menial tasks at H & R Block during the 1984 tax season. She had acquired her high school equivalency degree in 1976 and had attended some adult education classes to improve her chances of suitable employability. Unfortunately, her inability to type more than 30 words per minute hampered her in her numerous applications for jobs.

Following separation in August 1983, the parties divided their cash in the bank, $1300 to Linden and $1200 to Marilyn, and apportioned a $2500 certificate of deposit for Marilyn's use. Linden made voluntary payments of $700 per month from September 1, 1983, to April 1, 1984, for the support of their daughter, Theresa, her baby and Marilyn. He modified his payments to $600 per month in May 1984.

Linden's petition for dissolution was filed December 7, 1983. He proposed paying respondent $400 per month for the support of Theresa to the age of majority or completion of high school, whichever comes later. Theresa was eighteen in October 1984 and should graduate from high school in June 1985. He proposed to pay respondent the sum of $200 per month for "spousal support" for a period of five years. Finally, Linden's petition stated: "VIII. That the parties have accumulated real and personal property which should be distributed as follows:

3

```
TO PETITIONER                          TO RESPONDENT
Real Property in Troy, MT              House   in   Libby,   MT
1971 Ford Pickup                       1976 Ford
1976 Fort [sic] Pinto"
```

Respondent answered with a prayer for $200 per month for the support of Theresa and $690 per month as support for respondent till she should marry or die, provided that the amount should be reduced by any amounts of monthly income she would earn. She agreed to his proposed property division, but asked the court to consider additional items of personal property to make an equitable distribution.

At the hearing on May 22, 1984, Marilyn testified that she was residing in the family home. She acknowledged that two adult children living at home were contributing toward their share of expenses a total of $250 per month. Linden testified that he lived in an apartment and not on the property at Troy because the house was still uninhabitable. He admitted sharing expenses with a lady roommate who was earning about $16,000 per year. He was not contributing to the roommate's support.

The court divided the property in the manner both parties requested and granted custody of Theresa to respondent with $200 per month support to age eighteen or completion of high school. The court awarded respondent $500 per month alimony to continue until she remarry, cohabit or die.

Issue No. 1: Abuse of discretion in awarding indefinite alimony? Appellant contends that he proposed an "inequitable" property division so that respondent would have the bulk of the marital estate and then he would not "be no welfare state." In the motion for reconsideration, he contended that the court gave him no credit for the amount of his inheritance invested in his real property at Troy. He criticized the court for noting the inheritance in the

4

findings of fact but not debiting it from the marital estate in the conclusions of law.

The appellant has changed his theory on the property several times. In his petition in December 1983, he referred to property "the parties have accumulated" and proposed the present distribution. Petitioner's proposed findings of fact and conclusions of law in May 1984 recommended a formula which included $3,000 of the $35,000 inheritance in the family pot, and then debited $32,000 from the total property for Linden's inheritance. This formula would leave the marital share at $25,412.50 each, Marilyn to have a $15,000 excess. After judgment, his motion for reconsideration with the identical property division as proposed all along, Linden's share of the marital estate had dropped to $15,415 and Marilyn's was at $40,000. Finally on appeal, Linden's share remained at $15,415 and Marilyn's had risen to $42,500.

The court awarded the property as both parties requested. Acquiring property by gift or devise is only one factor to be considered in determining the respective contributions of both parties. In re the Marriage of Collett (Mont. 1981), 621 P.2d 1093, 1096, 38 St.Rep. 36, 39. The court referred to the inheritance in the findings of fact, as well as to Marilyn's twenty-five years as a homemaker. The court is not required to distribute equally but rather to consider the criteria set forth in § 40-4-202 to make an equitable distribution. In re the Marriage of Hecht (Mont. 1982), 649 P.2d 1257, 1259, 39 St.Rep. 1455, 1458. The statute is flexible and vests discretion in the District Court to look at each case individually. In re the Marriage of Laster (Mont. 1982), 643 P.2d 597, 601, 39 St.Rep. 737, 740; In re the Marriage of Martens (Mont. 1981), 637 P.2d 523, 526, 38 St.Rep. 2135, 2138.

We hold that the court did not abuse its discretion in its distribution of property. The court submitted detailed findings which noted the source of the marital properties and the nature of the marital contributions. "The findings were detailed, reasoned, and supported by the evidence presented at trial. . . ." Marriage of Levandowski (Mont. 1981), 630 P.2d 239, 241, 38 St.Rep. 1002, 1004.

In the conclusions of law, the court distributed the property as proposed by appellant:

"4. That the property of the parties is distributed as follows:

PETITIONER'S PROPERTY

| | |
|---|---|
| Real Property | $47,000.00 |
| Other Property per Exh. "B" | 6,615.00 |
| Total | $53,615.00 |
| Less debt | 8,200.00 |
| NET TOTAL | $45,415.00 |

RESPONDENT'S PROPERTY

| | |
|---|---|
| Real Property | $36,000.00 |
| Other Property per Exh. "A" | 4,070.00 |
| TOTAL | $40,070.00" |

The court let stand the proposed division as equitable. Whether considered as a disproportionate share of marital property to either party is irrelevant where both parties agreed to a division which is substantially fair. The court concluded:

"The Court will not order adjustment of differences in property distribution because of Petitioner's ability to pay in the light of support requirements herein."

The court then proceeded to determine the necessity for maintenance.

6

The award of maintenance is based upon the particular circumstances, and not upon a mandatory adjustment for property division. The court has the discretion to grant maintenance to the party seeking maintenance who lacks sufficient property to provide for his or her reasonable needs and is unable to meet those needs through appropriate employment. Section 40-4-203, MCA. "The Act provides for the coordination of property distribution and maintenance to assure that a spouse without the ability to support herself will be maintained at a similar standard of living." Levandowski, 630 P.2d at 242.

"Sufficient property" is income-producing property. Laster, 643 P.2d at 601; In re the Marriage of Bowman (Mont. 1981), 633 P.2d 1198, 1200, 38 St.Rep. 1515. The court does not abuse its discretion in refusing to force the sale of a family home. In re the Marriage of Madson (1979), 180 Mont. 220, 223, 590 P.2d 110, 112. In denying petitioner's motion for reconsideration, the court reasoned that it was to petitioner's benefit for respondent to receive the family home. If there were an inequality in the marital property division in so doing, it inured to petitioner's benefit in lesser monthly expense to maintain respondent's standard of living.

Appellant argues that he should not pay extended maintenance because he did not receive income-producing property. He is not the party seeking maintenance and he does have an income. Respondent received property which cannot provide for her reasonable needs. The issue is whether respondent is able to support herself through suitable employment. The evidence supported a conclusion that she has made efforts to become employable and has tried to find employment. Linden's projection of her trainability and improved employability was vague, while her efforts were clearly on the record. The

7

judge reasonably concluded that Marilyn could earn about $200 per month on a yearly basis. Determining her reasonable needs based upon a conservative projected monthly budget of $720 per month after the daughter leaves home, the court concluded that she would need $500 per month in maintenance in addition to what she could earn.

We hold that the court did not abuse discretion in this award of maintenance. The court considered her financial resources including the property apportioned to her in the decree and her ability to meet her needs independently. The court looked at the duration of the marriage and the standard of living established during the marriage, adjusted down by necessity to the "living condition expectancies of respondent," i.e., her reasonable budget.

Where appellant did not testify specifically as to respondent's rehabilitative capability, the court made a realistic appraisal of respondent's ability to support herself in some reasonable approximation of the standard of living established during the marriage. This Court approved the court's conscientious effort, particularly in a marriage of long-term duration in which there is a long-term absence of the spouse from the labor market and no presently existing employable skill. Madson, 590 P.2d at 112-113. As in Madson, this Court will not require respondent to sell her house and get job training. There was no basis on the record for the lower court to conclude that she would be totally self-supporting at the end of "some kind of training," as proposed by appellant.

The court concluded, based upon petitioner's monthly expenditures, that he has the ability to meet his needs and pay her the sum she will need. Petitioner's expenditures are not as conservative as respondent's. He has been able to

8

make support and maintenance payments of $600-$700 per month and still support a higher standard of living for himself than respondent enjoys.

Issue No. 2: Appellant raises a final issue: Did the court erroneously consider "marital misconduct" in apportioning maintenance? There is no basis in the record, the judgment, or the findings of fact and conclusions of law for such a contention. The court considered the living arrangements of both parties. From the record it is apparent that Marilyn is not supporting or supported by her adult children and Linden is not supporting or supported by his roommate. The court heard only limited testimony as to financial matters; no other questions or issues were raised anywhere on the record.

We have allowed a fiancee's income to be considered in determining the future financial status of a spouse and his ability to pay for maintenance. Laster, 643 P.2d at 602. We have allowed a second wife's income to be considered as part of a husband's family's net income. In re the Marriage of Cromwell, (1979), 180 Mont. 40, 44, 588 P.2d 1010, 1012. Here, the roommate's income was noted in the findings of fact on petitioner's share of household expenses. We can find no consideration of marital misconduct.

We apply the following test in reviewing a lower court judgment in a dissolution: Did the District Court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason resulting in substantial injustice? Laster, 643 P.2d at 601. We find the record replete with competent evidence. The court conscientiously coordinated the maintenance and property division.

9

We hold that the judge had a reasonable basis for awarding indefinite maintenance with the limits of remarriage or cohabitation with another mate. Respondent had made a concerted effort to adjust to a single life, but the record indicates that she will have a continued limited ability to meet her reasonable needs and that petitioner can afford to pay maintenance and still meet his needs.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

10