No. 87-43

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN RE THE MARRIAGE OF
LAVON MEES FEISTHAMEL,

          Petitioner and Respondent,

  and

GEORGE J. FEISTHAMEL,

          Respondent and Appellant.

---

APPEAL FROM:  District Court of the Sixteenth Judicial District,
             In and for the County of Rosebud,
             The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Michael Moses, Billings, Montana

    For Respondent:

        Lucas & Monaghan; Gary L. Day, Miles City, Montana

---

Submitted on Briefs: April 9, 1987

Decided:  June 30, 1987

JUN 30 1987

Filed:

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

George Feisthamel appeals a maintenance and property distribution award in a marital dissolution action from the Sixteenth Judicial District Court in Rosebud County, Montana.

We reverse in part, affirm in part and remand for further consideration in accordance with this Opinion.

The issues on appeal are:

1. Did the District Court err in making a determination of a need for a maintenance award without considering certain resources which were the subject of an antenuptial agreement between the parties?

2. Did the District Court abuse its discretion in its order of property disposition?

George and LaVon Feisthamel were married on October 18, 1974. They entered into an antenuptial agreement dated October 5, 1974, prior to the marriage. They separated in July, 1984.

The respondent, LaVon Feisthamel, is a 62 year old woman in fair health. LaVon has had a history of problems relating to high blood pressure, depression, post-menopausal problems, and osteoarthritis. She underwent eye surgery for glaucoma shortly before the trial in this matter and further surgery may be needed.

LaVon has not been in the employment market significantly. While she is a registered nurse, she is not currently licensed since her training occurred many years ago and she has never worked in that capacity. LaVon worked as a housewife and homemaker in a previous marriage and, following her first husband's death, was employed for a short time as a secretary/receptionist in a Billings Chiropractic Office. During her marriage to the appellant, she worked as a homemaker and housewife. She has made numerous attempts to obtain full employment and obtained a temporary Vista volunteer job for which she receives $357 per month. That job was to end in May, 1987.

The appellant, George Feisthamel, is a 59 year old male in generally good health. Appellant has been employed by Long Construction Company and Western Energy for many years as a heavy equipment mechanic. The appellant is a member of the International Union of Operating Engineers.

He continues to reside in the family home located in Colstrip, Montana. The respondent moved from the family home in July, 1984.

Both of the parties owned certain properties, both real and personal, prior to their marriage. The trial court found that the antenuptial agreement dated October 5, 1974, excluded from consideration all real and personal property owned by either party prior to the marriage in determining

the issues of maintenance and division of marital assets. This provision was honored in the final decree.

The trial court divided the net marital assets equally between the parties and awarded petitioner maintenance in the amount of $500 per month commencing November 1, 1986, and ending November 31, 1991.

The appellant contests the award of maintenance and the property disposition.

Appellant contends the District Court abused its discretion in awarding respondent this maintenance. He argues that the court erroneously failed to consider the financial resources of the respondent arising out of property subject to the antenuptial agreement. He states both parties knowingly signed the antenuptial agreement. Despite this, he argues the particular provisions disallowing the consideration of properties acquired before the marriage should be declared void as against public policy as they relate to a determination of the need for maintenance.

The provision involving the maintenance issue in the October 5, 1974 antenuptial agreement states:

> That in the event, after entering into the marriage, said parties find they cannot live together congenially as husband and wife and decide to separate and/or to secure a divorce, and it is necessary to make an equitable division of their property rights and a determination of the rights, if any, of Second Party to separate maintenance or temporary or permanent alimony, all real and personal property now owned by the parties shall

not be taken into consideration. Provided, however, in event of such separation and/or divorce, Second Party shall be entitled to an equitable division of the property accumulated and acquired as a result of and in connection with their marriage. Provided, further when said accumulated property has been equitably divided said parties shall execute and deliver to each other, a release of any and all right, title and interest which they may have or claim in and to the property now owned or hereafter accumulated by either party. Provided, further that in the event a divorce is granted by a Court of competent jurisdiction to either party the terms of this contract shall be binding upon said Court, and at the time of granting said divorce this contract shall be incorporated in said decree. (Emphasis added.)

Appellant claims that the District Court should have considered a certain annuity of $248 as well as other income or benefits she might receive from a trust provided by her deceased first husband.

Respondent LaVon's position is that the annuity income of $248 per month and any trust benefits are covered by the antenuptial agreement and should not be considered for determining the appropriateness of maintenance. She further argues that maintenance is appropriate even if the annuity was to be considered because she still lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment.

This issue requires an analysis of several statutes. Montana's maintenance statute § 40-4-203, MCA, states:

Maintenance. (1) In a proceeding for dissolution of marriage or legal separation or a proceeding for

maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203, MCA.

The rights of two parties to contract with one another are elemental and firmly established by the laws of this

- 6 -

state and our federal Constitution. Contracts between parties prior to their marriage as well as contracts between married parties, if fair and equitable, are enforceable contracts if they do not conflict with the laws and public policy of this State.

Section 28-2-201, MCA, allows all persons who are capable of contracting except minors, persons of unsound mind, and persons deprived of civil rights to enter into contracts. More specifically § 40-2-301, MCA, permits either a husband or a wife to enter into any engagement or transaction with the other or with any other person respecting property which either might, if unmarried, be allowed to enter into subject to the general rules on trusts which control the actions of persons occupying confidential relationships with each other.

This Court has also enforced antenuptial agreements as valid in the State of Montana if they meet the requirements of a contract. Stefonick v. Stefonick (1946), 118 Mont. 486, 167 P.2d 848; In Re Herzog's Estate (1973), 162 Mont. 410, 513 P.2d 9.

In the case before us, the trial court honored the provision in the Feisthamel antenuptial contract which disallowed consideration of each parties' property owned prior to the marriage for purposes of determining maintenance and property disposition.

We hold that this was error as it relates to the maintenance provision because such a provision conflicts with the inherent public policy expressed in § 40-4-203, MCA.

A grant of maintenance under the statute has specific preconditions which must be met. Section 40-4-203(1)(a), MCA, states a spouse must lack sufficient property to provide for his or her reasonable needs to qualify for a maintenance award. This requires the trial court to consider all of the financial resources available to the spouse seeking maintenance, including, but not limited to the resources listed in § 40-4-203(2)(a), namely, the marital property apportioned to him or her and the ability to meet one's needs independently.

As a general rule this Court will honor and uphold antenuptial agreements between two consenting parties in accordance with the contract and domestic relations laws of this State. However, a contract provision which disallows full consideration of one party's financial resources when determining the maintenance rights between the parties to a dissolution is not enforceable as against the public policy of this State.

The trial court is required by § 40-4-203 (2)(f), MCA, to consider the ability of the other spouse, the one from whom maintenance is sought, to meet his or her needs while meeting those of the spouse seeking maintenance. To this end

we hold that appellant's financial resources whether included in the antenuptial contract or otherwise, must also be considered in making a determination of maintenance.

Thus the trial court must consider all of the resources available to the parties before an award of maintenance may be granted.

The trial court also found that respondent testified she was not receiving social security benefits. In keeping with the above holding, we note that social security benefits are a potential financial resource of the parties. The United States Code through the Social Securities Act, provides that a divorced spouse of an individual entitled to social security retirement or disability benefits is entitled to spousal benefits if certain criteria are met. See 42 USCS §§ 402, 416.

According to one treatise, 2 Social Security, Law and Practice § 15:7 (John A. Glenn ed. 1987), a spouse is entitled to benefits if he or she:

> (1) applies for such benefits;
>
> (2) is at least 62 years old;
>
> (3) is not entitled to his or her own primary benefit in an amount equal to or greater than one-half that due his or her spouse; and
>
> (4) is not married. . . .
>
> A divorced spouse who is otherwise eligible for spousal benefits may receive those benefits regardless of whether the insured former mate has

begun to receive benefits. In order to be eligible, both the claimant and the insured must be age 62 or older and must have been divorced for at least two years prior to the date the spouse applies for benefits. Prior to 1985, a divorced spouse could not receive benefits unless the insured former mate had applied for and begun to receive benefits. Id. at 9.

The U.S. Code defines a "divorced wife" in 42 USCS § 416(c) to mean:

A woman divorced from an individual, but only if she had been married to such individual for a period of 10 years immediately before the date the divorce became effective.

Also 42 USCS § 402(e) provides for an entitlement of widow's social security insurance benefits if certain criteria are met.

Upon remand the trial court is instructed to consider the issue of respondent's potential eligibility for social security benefits in determining the need for a grant of maintenance to respondent.

This case is therefore remanded to the trial court with instructions to consider the resources included in the antenuptial contract and other available resources when determining an award of maintenance under these facts.

We find no abuse of discretion in the trial court's consideration and findings on the remaining statutory preconditions for a maintenance award listed in § 40-4-203(2)(b) through 2(f), MCA. The above decision,

therefore, does not necessarily preclude a maintenance award at the discretion of the trial court upon remand.

With respect to the second issue of property distributions, appellant contends that the trial court erred and abused its discretion by acting arbitrarily, which resulted in substantial injustice to appellant in the following respects:

First, the trial court included the appellant's retirement plan in the marital estate. Appellant argues the plan was part of the property subject to the antenuptial agreement of the parties. We hold the plan was properly included in the marital estate as a benefit of the employment of appellant similar to wages which are also includable. Further, the plan vested during the duration of the parties' marriage. It was not error to include the plan.

Second, appellant contends the trial court erred in its valuation of $2,000 for the 1975 pick-up and $2,800 for the 1977 Cadillac. A review of the record indicates the trial court arrived at a value for the 1975 pick-up between the Blue Book value and appellant's approximation of the value.

The record further indicates appellant states he was offered $1,700 for the 1977 Cadillac but he did not state its worth. Respondent's affidavit states it was worth $2,800 according to the Used Car Guide.

We find no abuse of discretion by the trial court in its determination of these values.

The last contention by appellant is that the trial court incorrectly used the appraisal value of the family home of $97,300, dated October 1, 1984. He contends the correct value was the one placed on it by himself of $78,000 at the date of the divorce proceedings in 1986.

Our review of the record indicates no error. This Court has recognized that valuation of the marital assets is preferably done at the time of distribution using fair market values. In re Marriage of Krause (Mont. 1982), 654 P.2d 963, 39 St.Rep. 1809. However, respondent had the home appraised by an independent appraiser at $97,300 in October of 1984. At trial, in August 1986, appellant speculated the home was worth $78,000 but when questioned by the trial court, he presented no concrete evidence. Without more, the trial court did not exceed the bounds of reason but employed conscientious judgment in adopting the respondent's valuation of the family home.

We find no error on the property valuation and distribution as argued by appellant. This case is affirmed in part, reversed in part and remanded in accordance with this Opinion.

_____
William B. Hunt, Sr.
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____

_____
John C. Sheehy

_____
L. C. Gulbrandson

_____
R. C. McDonough
Justices

- 13 -