No. 87-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF:
FARRELL C. STEWART,

          Petitioner, Appellant, and
          Cross/Respondent

and

ROBERT B. STEWART,

          Respondent, Respondent, and
          Cross/Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District
              In and for the County of Yellowstone
              The Honorable Robert Holmstrom, Judge presiding

COUNSEL OF RECORD:

    For Appellant:

        Virginia A. Bryan; Bryan Law Firm, Billings, Montana

    For Respondent:

        Frances M. Calton and Calvin A. Calton;
        Calton, Hamman, Calton and Wolff, Billings, Montana

---

Submitted On Briefs: March 31, 1988

Decided: May 9, 1988

Filed: MAY 9 - 1988

*Ethel M. Harrison*

———————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Petitioner Farrell Stewart appeals the September 25, 1987, decree of the Thirteenth Judicial District, Yellowstone County, dividing the marital estate. We affirm.

Farrell Stewart raises two issues for our review:

1. Did the District Court abuse its discretion in ordering that Farrell Stewart participate in $32,823 of marital debts?

2. Did the District Court abuse its discretion in awarding a $32,000 promissory note to Robert Stewart?

Respondent Robert Stewart cross-appeals and raises two additional issues:

3. Did the District Court abuse its discretion in determining the net worth of the marital estate?

4. Did the District Court abuse its discretion in distributing Farrell Stewart's inheritance to her?

Farrell Stewart and Robert Stewart were married in Minneapolis, Minnesota, in 1958. Farrell was twenty-two and Robert was twenty-six. Four children were born of the Stewart marriage, all of whom have reached the age of majority. Farrell filed for dissolution in June of 1986.

Both Farrell and Robert have college degrees. Farrell has worked as a part-time journalist at Eastern Montana College since 1971. In 1986 she earned approximately $10,000 from her job and received approximately $7,500 in investment income.

Robert has worked as a stockbroker during most of the marriage. His income has fluctuated. In 1981 and 1982 he earned approximately $50,000 per year, but after 1983 his income dropped sharply. Robert's net income in 1986 was approximately $2,500.

Issue 1. $32,823 debt.

In the final two years of the marriage, Robert received $32,823 in loans from various sources. The District Court concluded that the loans were marital debts:

> [T]here was no evidence to suggest that the Respondent spent the money, represented by the various notes, upon anything but living and business expenses. It was clear from the testimony that much of the parties' difficulties centered around the way they handled their finances throughout their married life and it was clear that the Respondent had, in the three or four years preceding the parties' dissolution, sustained a substantial decrease in earnings. He borrowed the money to try to keep his business afloat and to pay household expenses. In the Court's view, it was therefore equitable for the Petitioner to participate in those debts.

Section 40-4-202(1), MCA, states: "The court shall also consider the contribution or dissipation of value of the respective estates . . . ." Farrell contends that Robert dissipated the money through "reckless borrowing and spending habits." Farrell asserts that she knew nothing about the loans. Farrell concludes that the District Court erred by failing to find dissipation.

A District Court has far-reaching discretion in dividing the marital property. Our standard of review is that the District Court's judgment, when based upon substantial credible evidence, will not be altered unless a clear abuse of discretion is shown. Marriage of Watson (Mont. 1987), 739 P.2d 951, 954, 44 St.Rep. 1167, 1170.

In prior marital cases, this Court has stated that the standard of review was whether the District Court, in the exercise of its discretion, acted arbitrarily without employment of conscientious judgment or exceeded the bounds of

3

reason. For the guidance of the bench and bar, we specifically reject this phraseology for our standard of review in marital cases and adopt the standard of review set forth in Watson, supra. In re Marriage of Hall (Mont. 1987), 740 P.2d 684, 686-687, 44 St.Rep. 1321, 1324.

In this case, Robert borrowed the money in small increments to pay household bills and meet costs of running his office. Farrell freely accepted the benefits of these loans while the parties were still living together. Farrell's unsupported allegations do not create a presumption that Robert dissipated the marital estate. Any finding of dissipation must be supported by substantial evidence. In Re the Marriage of Merry (Mont. 1984), 689 P.2d 1250, 1256, 41 St.Rep. 2009, 2017. Farrell supplied no such evidence and failed to meet her burden of proof.

The District Court specifically looked at the nature and purpose of the loans and found no dissipation. The court had ample opportunity to review the evidence and observe the testimony of the parties. We hold that the District Court properly considered the loans under the guidelines of Watson and equitably distributed the $32,823 of marital debts.

Issue 2. $32,000 promissory note.

In 1984, Robert withdrew approximately $83,000 from his retirement plan. As a result of the early withdrawal, the Stewarts' joint tax liability exceeded $32,000. In September 1985, Farrell loaned Robert $32,000 to pay the Internal Revenue Service. Farrell insisted that Robert sign a promissory note for the amount.

The District Court found that the $83,000 was used for the parties' living expenses and Robert's business expenses. The District Court specifically noted the criteria of § 40-4-202, MCA, regarding the parties' occupations, sources

and amounts of income, and earning capacity. The Court then stated that "the setting over of the note to the Respondent was an equitable distribution." Farrell contends that the District Court improperly absolved Robert of his legal obligation to repay the $32,000 to her.

In analyzing this issue, we note that a husband and wife may legally contract with each other. Section 40-2-301, MCA. Furthermore, "contracts between married parties, if fair and equitable, are enforceable contracts if they do not conflict with the laws and public policy of this State." (Emphasis added.) In Re the Marriage of Feisthamel (Mont. 1987), 739 P.2d 474, 477, 44 St.Rep. 1117, 1120.

In the instant case, however, the enforceability of the $32,000 contract is subject to equitable distribution of the marital estate. Farrell received the benefits of the $83,000 while the marriage was in force and while living with Robert. The $32,000 loan helped relieve Farrell of the joint tax liability she incurred as an income-earning spouse.

In a proceeding for dissolution, property belonging to either of the parties may be apportioned between them equitably. Section 40-4-202(1), MCA. The District Court removed the inequitable burden of repayment from Robert. "The court is not required to distribute equally but rather to consider the criteria set forth in § 40-4-202, MCA, to make an equitable distribution." In Re the Marriage of Edwards (Mont. 1985), 699 P.2d 67, 70, 42 St.Rep. 593, 596. We hold that the District Court duly considered the purpose of the note and properly awarded the note to Robert.

Issue 3. Net worth.

Robert contends that the trial court distributed the marital estate without making a specific finding of net worth and therefore abused its discretion.

5

We disagree. As we stated in In Re the Marriage of Metcalf (1979), 183 Mont. 266, 271, 598 P.2d 1140, 1142, a trial court must consider the parties' assets and liabilities before making a distribution. Our review of the record reveals that the District Court listed the Stewarts' assets and liabilities and arrived at the net worth figure of $154,358.78 in Finding of Fact V. We hold that the court properly determined the net worth of the marital estate.

Issue 4. Farrell's inheritance.

In 1985, Farrell received an inheritance of approximately $110,000. She did not disclose the amount of the inheritance to Robert. Farrell invested the inheritance separately and maintained sole control over the funds.

The District Court found that Robert "has not made any contribution to the maintenance of the said inheritance." The court concluded that the assets directly traceable to the wife's inheritance should be set over to Farrell. Robert contends that the court should have divided the inheritance equally.

We review this issue under the guidelines of § 40-4-202(1), MCA, which states that the court may "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired . . ." (Emphasis added.) Section 40-4-202, MCA, is a flexible statute which vests wide discretion in the District Court. "There is no specific rule concerning how an inherited asset is to be treated when marital property is divided." In Re the Marriage of Martin (Mont. 1985), 705 P.2d 1114, 1116, 42 St.Rep. 1376, 1379.

In the instant case, Farrell's inheritance arrived on the eve of dissolution. The inheritance was not comingled into the marital estate. Robert did not contribute to the

investment or maintenance of the inherited assets. "If none of the value of the property is a product of contribution from the marital effort, the District Court can justifiably find that the non-acquiring spouse has no interest in the property." In Re the Marriage of Herron (1980), 186 Mont. 396, 404, 608 P.2d 97, 101.

The District Court assessed the inheritance within the context of assets acquired during the marriage. We hold that the District Court properly distributed the inheritance to Farrell.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices