No. 03-629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 40

IN RE THE MARRIAGE OF

JOHN W. BOCK,

       Petitioner and Appellant,

    v.

MARIANNE C. SMITH, f/k/a
MARIANNE C. S. BOCK,

       Respondent and Respondent.

APPEAL FROM:    The District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DR 99-427,
                 Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Byron Wade Boggs, Attorney at Law, Missoula, Montana

       For Respondent:

           Cynthia K. Thiel, Boone & Karlberg, Missoula, Montana

Submitted on Briefs:  December 15, 2004

Decided:  February  22, 2005

Filed:

_____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      John Bock (Bock) appeals from the District Court's distribution of the marital estate, award of child custody to his ex-wife Marianne Smith (Smith), conclusion of law making the order of protection permanent, and order temporarily amending the parenting plan. We affirm the first three and dismiss on the last issue.

¶2      We address the following issues on appeal:

¶3      1. Whether the District Court abused its discretion in distributing the marital estate, including the award to Smith of one-half of Bock's PERS account.

¶4      2. Whether the District Court abused its discretion in awarding primary custody of the children to Smith.

¶5      3. Whether the District Court abused its discretion in making the order of protection permanent.

¶6      4. Whether the District Court erred in temporarily amending the parenting plan on December 17, 2003.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7      Bock and Smith married in 1989. Their union produced three boys, born in 1990, 1993, and 1997. For most of their marriage the couple resided in Missoula, Montana,but when they could not find suitable employment they moved to Tulsa, Oklahoma, in 1998. Both worked for the same company in Tulsa for a number of months before the company declared bankruptcy. In May 1999, shortly after both lost their jobs, Smith took the children

and drove back to Missoula. Around the same time she let Bock know that she did not wish to continue in the marriage. Bock later initiated this dissolution proceeding.

¶8 Smith alleges that over the course of their marriage Bock subjected her and the children to repeated emotional abuse, and subjected the children to occasional physical abuse. Bock counters that there was no abuse of any kind, and he cites several witnesses who testified at trial that they never saw any signs of abuse. Smith's abuse allegations are largely based on her own testimony, although the allegations find support in the reports and testimony of psychologists who interviewed Smith, the children, and Bock, and concluded that there is reason to believe that Bock has been abusive.

¶9 Very shortly after moving back to Missoula, Smith petitioned for, and was granted, an order of protection that limited Bock's contact with Smith and the children. Although Bock was allowed some phone contact with the children and was later awarded occasional visits with them, he violated the order of protection repeatedly, sometimes calling Smith several times a day. The order of protection is still in effect, and since it was first put in place Bock has been convicted of three misdemeanor counts for violating its terms.

¶10 After Smith and the children left Tulsa, Bock moved in with his parents in Michigan where he still resides rent-free. Soon after moving he obtained a job with the State of Michigan. Smith worked a few different jobs in Missoula before retraining herself in software design. After three years of living in Missoula, Smith moved with the children to where her mother lives in Pennsylvania. During Smith's time back in Missoula, and also

3

since her move to Pennsylvania, Bock has enjoyed limited visits with the children, usually by visiting the area where Smith and the children are living.

¶11    Following the trial below, the District Court awarded primary custody of the children to Smith and distributed the marital estate.  At the time of separation the couple owned a home in Tulsa as well as a van.  In addition, Bock still has a PERS retirement account from his days working for the University of Montana.  The value of Bock's PERS contributions made during the marriage was $38,960.83.  After Smith returned to Missoula, taking the van with her, Bock made payments on the mortgage until the home sold, and, at first, made payments on the van.  However, after some time, he ceased making payments on the van, and, since Smith could not afford to make the payments, the van was repossessed.  Bock also made payments on the children's COBRA insurance until he included them in his health insurance at his job in Michigan.  Even so, during the first few months of separation, Bock did not provide any child support for Smith and the children.

¶12    The court held that Bock was responsible for the children's medical, dental, and counseling debts, and that Smith was entitled to half of the marital portion of the PERS account.  The court also held that Smith was not liable for a "loan" that Bock's father (William Bock) gave the family during their marriage nor for funds William Bock loaned to Bock after the separation.

¶13    Some months after the District Court's dissolution decree, and while this appeal was pending in this Court, Smith moved for an emergency amendment to the parenting plan. The court granted that motion, issuing an order temporarily amending Bock's visitation rights.

4

Bock appeals from that order as well as the earlier distribution of the marital estate, award of custody, and conclusion of law making permanent the order of protection.

## STANDARD OF REVIEW

¶14 In a dissolution proceeding, this Court reviews the District Court's findings to determine if they are clearly erroneous. *In re Marriage of Herrera*, 2004 MT 40, ¶ 18, 320 Mont. 71, ¶ 18, 85 P.3d 781, ¶ 18. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us the district court made a mistake." *Marriage of Herrera*, ¶ 18. In reviewing discretionary district court rulings, such as the distribution of a marital estate or the valuation of those distributions, we review for abuse of discretion. *Siefke v. Siefke*, 2000 MT 281, ¶ 7, 302 Mont. 167, ¶ 7, 13 P.3d 937, ¶ 7. In cases awarding child custody, we review whether the District Court's findings of fact are clearly erroneous. If clear error is not apparent, we will uphold the decision below unless the court abused its discretion. *McDermott-Yeargin v. McDermott*, 2003 MT 283, ¶ 9, 318 Mont. 13, ¶ 9, 79 P.3d 245, ¶ 9 (citing *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, ¶ 10, 63 P.3d 499, ¶ 10) .

## DISCUSSION

### ISSUE ONE

¶15 *Whether the District Court abused its discretion in distributing the marital estate, including the award to Smith of one-half of Bock's PERS account.*

¶16    The District Court found that Smith was due one-half of the portion of Bock's PERS account resulting from contributions made during the marriage. In light of the distribution of the other assets in the marital estate, Bock argues that the court erred in not awarding him the entirety of the PERS account. Bock contends that the District Court erred in finding that he failed to support the children in the past and in finding that Smith was not liable for the funds that William Bock loaned to the couple before separation.

¶17    Each party testified at length regarding the support, and lack of support, that Bock gave to Smith and the children after Smith took them back to Missoula. The record supports Bock's claims that he paid the mortgage on the Tulsa house until it sold, initially made some payments on the family van that Smith took with her, and made COBRA insurance payments for the children before he found a job in Michigan. However, Smith's claim that Bock did not provide support for living expenses after the initial separation is also supported, as is the claim that he ceased making payments on the van, which led to its repossession. Taking all of this evidence into account, we conclude that the District Court was not clearly erroneous and did not abuse its discretion in finding that Bock failed to support the children when he was financially able.

¶18    William Bock testified that when he gave $27,000 to the couple during their marriage, it was understood to be a "loan" that must be repaid. Smith's testimony indicated that she understood the funds were a gift intended to help the struggling couple rather than a loan. William Bock kept a list of funds that he had "loaned" to the family and this was offered as evidence that he expected to be paid back. However, Smith gave credible testimony that she

6

did not know of this list and that she had no reason to know that the family was expected to pay the funds back. One amount supposedly "loaned" was the cost of a flight for William Bock to see Smith and her youngest son in Seattle when her son was there for medical reasons. Smith stated that William Bock simply showed up unannounced. At the time Smith merely considered this an act of kindness and not a "loan" she would have to later repay.

¶19 John Bock cites *Siefke* and *Marriage of Stewart* (1988), 232 Mont. 40, 757 P.2d 765, for authority in contending that Smith shares responsibility in repaying the "loan" from his father. Neither of these cases assist Bock in his argument. In *Siefke* we upheld the district court's finding that an advance on the husband's inheritance was not part of the marital estate. *Siefke*, ¶ 15. Similarly, the "loan" Bock received from his father should not be a part of this marital estate. In *Stewart* the husband took out loans, and we upheld the district court's finding that the wife shared in the debt even though she purported to be unaware of the loans. *Stewart*, 232 Mont. at 42-43, 757 P.2d at 767. However, unlike the instant case, the loans in *Stewart* were bona fide debts. Here, there exists substantial credible evidence that the loan could just as easily have been understood to be a gift. Therefore, we determine that the District Court was not clearly erroneous and did not abuse its discretion in concluding that Smith does not owe William Bock for any funds loaned to his son.

¶20 Bock further contends that the District Court erroneously relied on Finding of Fact 24 in distributing the estate. Because this finding relates to "emotional abuse" that Smith "believes" she suffered over the course of her marriage, Bock argues that such a finding is irrelevant in a no-fault proceeding. Whatever the merits of this contention, the District Court

7

did not rely on Finding 24 in distributing the marital estate but only on child custody matters. Thus, Bock's contention fails.

¶21    We therefore uphold the District Court's distribution of the marital estate, including Bock's PERS account. Smith is entitled to half of the portion of the account attributable to contributions made during the marriage.

## ISSUE TWO

¶22    *Whether the District Court abused its discretion in awarding primary custody of the children to Smith.*

¶23    Bock contends that the District Court erred in awarding primary custody of the children to Smith. This state uses the "best interests of the child" standard in awarding custody. Section 40-4-212, MCA, enumerates the factors relevant to the standard. Bock contends that he should be awarded primary custody because on several of those factors the evidence weighs in favor of him. He argues that Smith has been unable to provide the children with a stable home, to keep a stable job, or to consistently get the children to school on time. Further, he asserts that she has been in "virtually constant counseling" for most of her life and has opposed Bock's visitation with the children. Additionally, Bock contends that the District Court's findings relating to possible abuse Smith and the children suffered are clearly erroneous.

¶24    There is substantial credible evidence that the deficiencies Bock cites were, at least partially, caused by his own actions. On at least one occasion Smith moved residences because she feared for her safety because Bock, in violation of an order of protection,

8

obtained her street address. Much, if not most, of her counseling since marrying Bock 16 years ago can be credibly attributed to emotional abuse he has inflicted upon her. Smith has opposed visitation when Bock has violated court orders, sometimes repeatedly and on innumerable instances, or where there is evidence that the children fear meeting with him. Smith has had trouble holding a stable job, but she has gone to great lengths to retrain herself as a software programmer and has cared for her children remarkably well in spite of her employment and monetary difficulties. The children were often tardy to class when attending school in Missoula, but since the move to Pennsylvania have kept a spotless attendance record.

¶25 The issue of abuse is, of course, especially important. Bock contends that the District Court's findings relating to abuse during the marriage are clearly in error. The District Court did not go so far as to say Bock abused his ex-wife or children but did find that he has had trouble with overly-disciplining the children in the past, and that Smith's allegations of emotional abuse "have a valid factual basis." Bock's briefing ignores and belittles the detailed account Smith gave of ongoing emotional abuse and of the analyses of multiple psychologists detailing the children's fear of their father. Smith recounted how Bock would yell and sometimes slap the children in anger and how near the end of their marriage he would imply that he was ready to physically harm her if she did not do what he demanded. One psychologist, Dr. Hergenrather, testified that the two older children feared their father and that this created a great deal of anxiety, and even depression, for them.

¶26 In addition to his own testimony, Bock presented testimony from his parents and from friends who have all observed Bock and the children together, both before and after the

9

couple separated. This testimony contradicted the statements of Smith and the psychologists. His witnesses said that they had never observed Bock treat Smith or the children with anger, and that Smith never complained of abuse during the marriage.

¶27 Given this conflicting evidence regarding abuse we conclude that the District Court's findings are supported by the record. "'Even when there is a conflict in the evidence, we will uphold the court's evidence where there is substantial credible evidence to uphold its findings of fact and conclusions of law.'" *Jefferson County ex rel. Bd. of Comm'rs v. McCauley Ranches*, 1999 MT 333, ¶ 31, 297 Mont. 392, ¶ 31, 994 P.2d 11, ¶ 31 (quoting *Lorenz v. Estate of Schilling* (1989), 236 Mont. 82, 84, 768 P.2d 869, 870). We also conclude that the court's findings that Bock failed to consistently provide financial support, and that, in their current environment, "[t]he children are making excellent grades in school and are healthy, happy, and well maintained" are supported by the record. Therefore, the District Court did not abuse its discretion in awarding primary custody to Smith with scheduled visitation to Bock.

**ISSUE THREE**

¶28 *Whether the District Court abused its discretion in making the order of protection permanent.*

¶29 When first separating from Bock, Smith obtained an order of protection limiting Bock's contact with her and the children. In the District Court's conclusions of law the court made the order of protection permanent. "The decision to continue, amend or make permanent an order of protection is for the District Court to determine, and we will not

10

overturn its decision absent an abuse of discretion." *Schiller v. Schiller*, 2002 MT 103, ¶ 24, 309 Mont. 431, ¶ 24, 47 P.3d 816, ¶ 24 (citing *Stoneman v. Drollinger,* 2000 MT 274, ¶ 53, 302 Mont. 107, ¶ 53, 14 P.3d 12, ¶ 53). Section 40-15-204, MCA, states, "The court may, on the basis of the respondent's history of violence, the severity of the offense at issue, and the evidence presented at the hearing, determine that to avoid further injury or harm, the petitioner needs permanent protection. The court may order that the order of protection remain in effect permanently." Bock contends that he has no "history of violence," and that therefore the order of protection was improperly granted and made permanent.

¶30 Contrary to Bock's statements, Smith presented substantial credible evidence detailing a "history of violence," including the abusive behavior discussed above and the fact that Bock had been convicted of three counts of violating the order of protection. Given this evidence we conclude that the District Court did not abuse its discretion in making the order of protection permanent.

## ISSUE FOUR

¶31 *Whether the District Court erred in temporarily amending the parenting plan on December 17, 2003.*

¶32 On December 10, 2003, Smith made an emergency motion to temporarily amend the parenting plan. The children were due to visit their father over the Christmas holiday. She alleged that when the children had visited their father the previous summer the two youngest suffered a deterioration in their mental health. Smith contended that she did not bring her "emergency" motion earlier because the evidence of the deterioration became particularly

11

apparent in late November 2003. She argued that the two children should not be allowed to visit with their father unless supervised, until a psychological evaluation could be made of the children.

¶33 The court noted that Smith was "conveniently late" in requesting relief, but nevertheless granted the motion because "the Court cannot risk the harm to the children in the event Petitioner's concerns prove well-founded." Because of unrelated matters, a hearing on the issue was not held for over two months. At the hearing, the parties stipulated to a visitation schedule, and there is nothing in the record to indicate that the merits of the emergency order were even discussed.

¶34 Bock asks us to rule on the merits of the December 17, 2003, order so we may "prevent future abuses such as this from occurring" and "set down clear guidelines" for similar cases. He does not contend that this Court can now fashion any relief regarding the December 2003, visit, nor does he specifically say that "future abuses" might occur *in his case*. Instead he merely argues that the matter is one of importance "to prevent future abuses such as this . . . ." In doing this Bock asks us to give an advisory opinion, something we cannot do. *Northfield Ins. Co. v. Montana Ass'n of Counties*, 2000 MT 256, ¶ 18, 301 Mont. 472, ¶ 18, 10 P.3d 813, ¶ 18 ("A determination of the issue . . . would constitute an advisory opinion and courts have no jurisdiction to issue such opinions."). Therefore, we do not address the merits of the December 17, 2003, order.

## CONCLUSION

¶35 We affirm the District Court's distribution of the marital estate, award of custody, and conclusion of law making the order of protection permanent.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE