DA 07-0552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 279N

DOUGLAS JAMES GUILL,

       Petitioner and Appellant,

  v.

CANDACE KATHLEEN GUILL,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                 In and For the County of Lincoln, Cause No. DR 2006-101
                 Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              S. Charles Sprinkle, Sprinkle Law Firm, Libby, Montana

       For Appellee:

              Robert L. Zimmerman, Attorney at Law, Thompson Falls, Montana

Submitted on Briefs:  July 30, 2008

Decided:  August 5, 2008

Filed:

_____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     This is an appeal by Douglas James Guill ("Douglas") from the District Court's Findings of Fact, Conclusions of Law, and Decree of Dissolution dated August 7, 2007.  The District Court's decision dissolved Douglas's marriage to Candace Kathleen Guill ("Candace"); divided (50% to each party) the marital estate (basically real property); declined to award maintenance to Candace; and required each party to bear his or her own attorney's fees and costs.

¶3     Douglas raises two issues on appeal, both of which challenge the District Court's determination that Candace and Douglas did not separate prior to the filing of the petition for dissolution in this case.

¶4     Factually, this case is one of the more bizarre to reach this Court.  As the District Court noted, there is a "cult aspect" to this case.  From the trial court's decision we learn that the parties were married in Boise, Idaho, on January 5, 1973.  In 1981 or 1982 Douglas had some sort of religious revelation, after which he claimed to be able to hear God directly and to know what people were thinking.  Douglas became the "lord of the house" and Candace became submissive to him.  The court found that Douglas began to

2

control every aspect of Candace's life. In July 1992, Douglas took up with the sister of a man with whom Candace had an affair. Candace claimed the affair was Douglas's idea. This woman, Nicole, moved into Douglas's household, and essentially supplanted Candace as Douglas's wife. Candace was moved into an outbuilding, and later into the basement of a newly constructed family home. Candace performed chores around the house and the parties' property; she home schooled the parties' children; and she assisted to some extent in Douglas's business. Candace was, however, basically relegated to the status of an unseen domestic worker. Candace continued to believe that Douglas had some sort of special relationship with God, and he continued to remind her that she was unworthy and "spiritually unclean" because of the affair. Candace lived this way for 16 or 17 years.

¶5 Douglas argues that the parties were separated in 1991, even though there was no legal document by which a separation was ordered by a court of competent jurisdiction. He contends that the facts of this case indicate that the parties had entered into a "de facto separation" with the result that all property acquisitions following the date of separation in 1991 should have been awarded to him as his sole and separate property. Douglas contends that the District Court erred in failing to recognize this de facto separation and in not awarding Douglas the majority of the marital estate "less, perhaps, one-half of the properties had by the parties prior to the separation."

¶6 Candace maintains that the parties never separated until Douglas was arrested on a criminal charge not involved with this proceeding. Candace contends that the District

Court's finding that they never separated prior to the filing of the petition for dissolution on October 10, 2006, is not clearly erroneous and is in fact supported by the evidence.

¶7 In distributing the marital estate, the court reasoned that Candace did contribute to the marriage. To the extent that the parties' children, Sara and Jacob, were educated at all, they were home schooled by Candace, notwithstanding Douglas's belief that formal education was largely a waste of time. Moreover, the court found that Candace worked on the parties' property, performing manual labor on the house and the yard, and doing other chores in and around the property. The court also found that Candace placed supply orders for Douglas's business and helped with the tax returns.

¶8 In a dissolution proceeding, this Court reviews the district court's findings to determine if they are clearly erroneous. *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, ¶ 14, 107 P.3d 488, ¶ 14. As for discretionary district court rulings, such as the distribution of a marital estate or the valuation of those distributions, we review for abuse of discretion. *Bock*, ¶ 14.

¶9 On the basis of the record and, having considered the parties' arguments, we have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 internal operating rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that this appeal is without merit. The District Court's findings of fact are not clearly erroneous and the legal issues are controlled by settled Montana law that the District Court correctly interpreted.

¶10 Affirmed.

/S/ JAMES C. NELSON

We Concur:


/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE