DA 09-0586

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 124

IN RE THE MARRIAGE OF:

LAMOINE R. BAKER,

       Petitioner and Appellant,

  and

MICHAEL F. BAKER,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR 2008-108
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Amy S. Rubin, Attorney at Law, Missoula, Montana

          Brandi R. Ries, Attorney at Law, Polson, Montana

      For Appellee:

          Michael F. Baker (Self-Represented), Arlee, Montana

Submitted on Briefs:  March 31, 2010

Decided:  June 3, 2010

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     LaMoine Hendrickson (formerly LaMoine Baker) appeals a decision of the District Court for the Twentieth Judicial District, Lake County, distributing the parties' marital estate. We reverse and remand for further proceedings consistent with this Opinion.

¶2     LaMoine raises several issues on appeal which we have restated as follows:

¶3     1. Whether the District Court erred in concluding that the parties separated in May 2001, and in dividing the marital estate as of that date.

¶4     2. Whether the District Court erred in including in the marital estate property acquired by LaMoine after May 2001.

¶5     3. Whether the District Court erred in including in LaMoine's share of the marital estate the proceeds of a class-action settlement LaMoine received in 2001.

¶6     4. Whether the District Court erred in including in LaMoine's share of the marital estate a Social Security disability payment she received in error and that had to be repaid.

¶7     5. Whether the District Court erred in including in LaMoine's share of the marital estate the value of the tribal trust land that she leases.

¶8     6. Whether the District Court erred in ordering LaMoine to pay Michael a $15,000 property equalization payment.

¶9     Because we hold that the District Court erred in determining the date the parties separated, we remand to the District Court for revaluation and redistribution of the parties' marital estate. Consequently, Issue 2, regarding the property acquired after 2001,

2

and Issue 6, regarding the property equalization payment, are rendered moot by our holding.

## Factual and Procedural Background

¶10    LaMoine and Michael married in 1991. No children were born of the marriage; however, Michael's son Jesse, who was three years old at the time the parties married, lived with them. Thus, during the parties' marriage, LaMoine was primarily a homemaker and stay-at-home mom caring for Jesse. When LaMoine did work outside the home, she earned very little income as she had only a sixth-grade education and suffered from dyslexia. Michael, who was employed as a licensed electrician, provided the primary source of financial support for the family.

¶11    At the time of trial in this matter, LaMoine was 56 years old earning $1,386.67 per month and Michael was 44 years old earning $4,686.93 per month. Michael also had a retirement account through his employment as an electrician.

¶12    LaMoine filed a Petition for Dissolution on September 30, 2008. In her petition, she alleged that the parties separated on May 30, 2006. Michael filed his Answer on November 24, 2008, wherein he also stated that they had separated on May 30, 2006. On April 27, 2009, Michael filed his response to the court's Pre-Trial Order in which he again stated that the parties separated in May 2006. In addition, in his answers to LaMoine's first set of discovery requests, Michael did not deny that the separation date was May 2006, and in his discovery requests to LaMoine, he once again specifically stated that the separation date was May 2006.

¶13    It was not until July 24, 2009, when Michael filed his answers to LaMoine's second set of discovery requests, that Michael alleged, for the first time, that the separation date was May 1, 2001. He claimed that he had moved out of the marital home on that date and that LaMoine had filed a restraining order against him on that date, hence that was the date the parties had actually separated. However, at no time did Michael move to amend his pleadings to reflect his contention that the parties separated in 2001 and not in 2006.

¶14    The matter came before the District Court for a bench trial on August 17, 2009. At trial, LaMoine's counsel moved the court to consider the parties' date of separation as May 2006 based on the pleadings. Counsel pointed out that the restraining order Michael referred to as indicating the parties date of separation, was actually vacated two weeks after it was issued. Counsel also pointed out that there was substantial other evidence indicating that the parties did not separate until May 2006. This evidence included the parties' tax returns for the years 2005 through 2008. These tax returns showed that, prior to 2006, the parties filed as "Married, Filing Separately." However, for the 2006, 2007 and 2008 tax years, both parties filed their returns indicating a filing status of "Single." In addition, counsel submitted evidence that Michael continued to pay the loan on the garage the parties built in 2002 until the loan was paid in full in February 2006. Nevertheless, Michael's counsel objected to using May 2006 as the date of separation, and the court took the matter under advisement.

¶15    The chief asset of the marital estate was the 1991 mobile home that the parties purchased after they were married and in which LaMoine continues to live. LaMoine is a

4

member of the Sélish and Ktunaxa Tribes[1] (the Tribes); Michael is not. Because LaMoine is a member of the Tribes, the mobile home was purchased with a loan from the Tribes and it was titled solely in her name. The mobile home was placed on a tribal lease lot located in St. Ignatius, Montana, and a garage was built on the property in 2002 with money borrowed from the Tribes.

¶16 The parties presented conflicting evidence at trial regarding the value of the mobile home. LaMoine's real estate agent, Deborah Weivoda, testified that the current value of the mobile home was $15,983.27, and that the garage that was built in 2002 increased the value of the property by $20,000. She did not assign any value to the land the mobile home and garage sit on because the land is part of a tribal trust lease. On the other hand, Michael's real estate appraiser, David Murphy, assigned a value of $10,000 to the tribal trust lease. He testified that the value of the entire property, including the mobile home, the garage and the lease, was $47,500.

¶17 In addition, the parties submitted evidence regarding various items of personal property they acquired prior to the dissolution proceedings. In 2005, Michael purchased a 1999 Harley Davidson motorcycle and a 2005 John Deere lawn mower. He gave the lawn mower to LaMoine as a gift. In 2006, Michael purchased a 1995 GMC truck and a 1999 Dodge Intrepid. And, shortly before trial, Michael purchased a 2009 Harley Davidson motorcycle.

---

[1] Recognizing that the tribal names we know today are often a mistranslation of sign language used in earlier times to refer to a particular tribe, we intend to begin incorporating into our opinions the names with which the tribes refer to themselves. Thus, what we formerly referred to as the Confederated Salish and Kootenai Tribes, we now refer to as the Sélish and Ktunaxa Tribes.

¶18 Other evidence introduced at trial indicated that sometime in 2001, LaMoine received $12,500 as part of a class-action settlement because she had used the diet pill Fen-Phen. LaMoine also received a Social Security disability payment prior to May 2001 for a back injury. However, after LaMoine cashed the check, the Social Security Administration requested the money back because Michael's income exceeded the income requirements which made LaMoine ineligible to receive disability payments. Michael claimed at trial that the money was withheld from his tax refund.

¶19 On September 16, 2009, the District Court issued its Findings of Fact, Conclusions of Law and Order wherein the court concluded that the parties' date of separation was May 2001. The court went on to value the mobile home, the garage and the tribal lease land at $45,983.27 using the 2009 valuations given at trial. In addition, the court excluded from the marital estate the vehicles and motorcycles acquired by Michael in 2005 and 2006, while including in the marital estate the lawn mower Michael gave LaMoine in 2005. The court also included in the marital estate the Fen-Phen settlement LaMoine received in 2001, the Social Security disability overpayment and Michael's retirement account.

¶20 In dividing the marital estate, the District Court determined that LaMoine's share should include the mobile home, the garage, the tribal trust lease, the lawn mower, the Fen-Phen settlement, and the disability overpayment for a total of $63,683.27. The court also determined that Michael's share should include only his retirement account in the amount of $22,933.02. The court then concluded that because LaMoine received $40,000

6

more than Michael, LaMoine must pay Michael $15,000 to equalize the distribution of the marital assets.

¶21 LaMoine appeals the District Court's Findings of Fact, Conclusions of Law and Order. Michael did not file a brief in response to LaMoine's appeal.

**Standard of Review**

¶22 We review a district court's distribution of marital property to determine whether the court's findings of fact are clearly erroneous. *In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67 (citing *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Williams*, ¶ 14. If we determine the district court's findings are not clearly erroneous, we will affirm the district court's distribution of marital property unless we find that the district court abused its discretion. *Williams*, ¶ 14. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *Williams*, ¶ 14 (citing *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151). In addition, we review a district court's conclusions of law to determine whether the court's conclusions are correct. *Williams*, ¶ 14 (citing *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72).

**Issue 1.**

7

¶23   *Whether the District Court erred in concluding that the parties separated in May 2001, and in dividing the marital estate as of that date.*

¶24   LaMoine argues on appeal that the District Court erred in determining that the date of separation was May 2001 and then using that date as the basis for distributing the marital property.  She contends that not only was their substantial and overwhelming evidence presented at trial showing that the parties did not separate until May 2006, but Michael's own admissions should have been sufficient for the court to find that the parties' date of separation was May 2006.

¶25   We agree with LaMoine and we point out that if we were to hold that the District Court was correct in valuing the marital estate as of May 2001, we would also have to hold that the District Court erred in including in the marital estate the garage that was not built until 2002, and the lawn mower that was not purchased until 2005.  However, these issues are moot as we now hold that the correct date for valuing and distributing the marital estate is May 2006.

¶26   LaMoine alleged in her Petition for Dissolution that the date of separation was May 2006 and Michael admitted the same in his Answer.  Michael also stated in his response to the court's Pre-Trial Order, in his answers to LaMoine's first set of discovery requests, and in his discovery requests to LaMoine, that the date of separation was May 2006.  It was not until Michael filed his answers to LaMoine's second set of discovery requests that Michael alleged that the parties separated in 2001.

¶27   Michael could have moved the District Court for leave to amend his pleading pursuant to M. R. Civ. P. 15(a), but he failed to do so.  Michael also had the opportunity

8

to change his prior admission regarding the date of separation when he filed his Response to the District Court's Dissolution Pre-Trial Order, but again he failed to do so. Instead, by asserting that the 2005 John Deere lawn mower had been purchased during the parties' marriage, Michael once again indicated that the parties separated in 2006. At trial, while Michael's counsel objected to LaMoine's motion to consider May 2006 as the date the parties separated, Michael's counsel did not move the court for leave to amend his pleading.

¶28 It is well settled that parties are bound by the admissions in their pleadings. *Audit Services v. Frontier-West, Inc.*, 252 Mont. 142, 148-49, 827 P.2d 1242, 1247 (1992); *see also Grimsley v. Estate of Spencer*, 206 Mont. 184, 199, 670 P.2d 85, 93 (1983) ("That a party is bound by his pleadings needs no further elucidation."); *Fey v. A. A. Oil Corp.*, 129 Mont. 300, 323, 285 P.2d 578, 590 (1955) ("The rule is that parties are bound by and estopped to controvert admissions in their pleadings.").

¶29 Because Michael admitted in his Answer, and several times thereafter, that the date of separation was May 2006, LaMoine had no reason to believe that the separation date was a contested issue that would need to be litigated at trial. We conclude that LaMoine was unfairly prejudiced by the District Court's ruling that the parties separated in May 2001, because the court essentially granted Michael the right to amend his pleadings without his ever having made a motion to do so. As a result, the court never afforded LaMoine an opportunity to respond, thereby depriving her of notice and an opportunity to be heard. *See In re Marriage of Huotari*, 284 Mont. 285, 291, 943 P.2d

1295, 1299 (1997) ("In marital cases, as in other cases, the essential elements of due process are notice and an opportunity to be heard.")

¶30 Based on the foregoing, we hold that the District Court erred in concluding that the parties separated in May 2001 rather than May 2006 as Michael admitted in his Answer. We further hold that, based on the parties' pleadings, May 2006 is the date the parties separated, hence any property held by both parties as of that date should be included in the marital estate. Accordingly, we remand to the District Court for revaluation and redistribution of the marital estate using May 2006 as the date of separation.

### Issues 3 and 4.

¶31 *Whether the District Court erred in including in LaMoine's share of the marital estate the proceeds of a class-action settlement LaMoine received in 2001 as well as a Social Security disability payment she received in error and that had to be repaid.*

¶32 LaMoine argues that the District Court erred in including in the marital estate the money LaMoine received from the Fen-Phen settlement in 2001 because that money no longer exists; it was entirely dissipated during the marriage. LaMoine also argues that the court erred in including in the marital estate a debt of $3,500 in the form of a repayment to the Social Security Administration because there was no evidence presented at trial regarding the amount of the repayment, when it was repaid, or by whom.

¶33 We agree with LaMoine that in both instances the District Court awarded property that did not exist. We have repeatedly held that, in a dissolution action, a court cannot distribute non-existent property from the marital estate. To do so is an abuse of the

10

District Court's discretion. *In re Marriage of Harris*, 2006 MT 63, ¶ 31, 331 Mont. 368, 132 P.3d 502 (citing *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535).

¶34 LaMoine testified at trial that she spent the money from the Fen-Phen settlement on new carpet and linoleum for the marital home; a new bed for her and Michael; new bedroom furniture for Michael's son Jesse; and a used Cadillac. Michael testified that instead of spending the money on their home, LaMoine bought her daughter a truck and spent the rest of it on her grandchildren. However, Michael did not introduce any evidence to dispute LaMoine's testimony or to support his own. Either way, the money was spent long before the parties' May 2006 date of separation.

¶35 Moreover, Michael did not contribute to the value or receipt of these funds as this was a settlement LaMoine received for a potential personal injury to herself. Consequently, the Fen-Phen settlement should not be considered as part of the marital estate on remand.

¶36 Similarly, there was conflicting testimony by the parties at trial as to how the disability check LaMoine mistakenly received from the Social Security Administration was repaid. LaMoine testified that she thought the money was withheld from her paycheck, while Michael testified that the money was withheld from his tax "rebate." Neither party presented evidence as to the amount of the repayment or how exactly it was repaid. Nevertheless, from the parties' testimony, this repayment appears to have occurred in 2001, long before the parties' separation in May 2006. Furthermore, both parties asserted in their pleadings and at trial that there were no outstanding marital debts,

thus the District Court erred in considering this a debt owed by LaMoine. Consequently, the Social Security repayment should not be considered as part of the marital estate on remand.

¶37 Accordingly, we hold that the District Court erred in including in LaMoine's share of the marital estate the proceeds of the Fen-Phen settlement as well as the Social Security disability payment.

**Issue 5.**

¶38 *Whether the District Court erred in including in LaMoine's share of the marital estate the value of the tribal trust land that she leases.*

¶39 In its Findings of Fact, Conclusions of Law and Order, the District Court stated that "although the land is tribal trust land, it does have value that must be accounted for in this action of $10,000." LaMoine argues that the District Court erred in making this determination because the tribal trust land does not belong to either party, it belongs to the Tribes. We agree.

¶40 Section 40-4-202, MCA, provides that in a proceeding for dissolution of a marriage, the court may "equitably apportion between the parties *the property and assets belonging to either or both*, however and whenever acquired and *whether the title thereto is in the name of the husband or wife or both* [emphasis added]." In this case, LaMoine does not have title to the tribal trust land. Rather, she is entitled to lease it because she is an enrolled member of the Tribes. Because Michael is not an enrolled member of the Tribes, he cannot benefit from the tribal lease.

¶41     Moreover, "Indian trust property cannot be conveyed without the consent of the Secretary of the Interior." *In re Marriage of Wellman*, 258 Mont. 131, 137, 852 P.2d 559, 563 (1993) (citing *Tooahnippah v. Hickel*, 397 U.S. 598, 609, 90 S. Ct. 1316, 1323 (1970)). We stated in *Wellman* that although § 40-4-202(1), MCA, requires that a court equitably apportion marital property in a dissolution proceeding, "strong federal and tribal interests in trust property mandate[d] [the court's] conclusion that § 40-4-202(1), MCA, cannot be construed to require or allow adjudication of Indian trust land by a state district court." *Wellman*, 258 Mont. at 138, 852 P.2d at 563. And, we concluded in that case that any effort "to assert state court jurisdiction over Indian trust land by figuratively bringing it into state court for valuation prior to an ordered sale and division of proceeds or a monetary award equal to [a spouse's] equitable share of the value of the land" "would result in a prohibited adjudication of interests in Indian trust land." *Wellman*, 258 Mont. at 139, 852 P.2d at 564.

¶42     Accordingly, we hold that the District Court erred in including in LaMoine's share of the marital estate the value of the tribal trust land that she leases. Thus we remand to the District Court for revaluation of the marital estate excluding the $10,000 value the court erroneously assigned to the tribal trust land.

¶43     Reversed and remanded for further proceedings consistent with this Opinion.


                                                                /S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS