DA 14-0338

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 89N

IN RE THE MARRIAGE OF:

JOSHUA MERIAH TRIPP,

      Petitioner and Appellee,

  v.

MEGEN LOUISE TRIPP,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-12-154
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Quentin M. Rhoades, Nicole L. Siefert, Sullivan, Tabaracci & Rhoades, P.C.;
Missoula, Montana

      For Appellee:

            J.R. Casillas, Datsopoulos, MacDonald & Lind, P.C.; Missoula, Montana

Submitted on Briefs:  February 18, 2015
Decided:  March 23, 2015

Filed:

                                      Clerk

FILED

March 23 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0338

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Megen Tripp (Megen) appeals from a decree of dissolution from the Fourth Judicial District Court, County of Missoula. We restate the issues on appeal as follows:

1. *Whether the District Court abused its discretion when imposing discovery sanctions.*

2. *Whether the District Court erred by not including proceeds from husband's personal injury claim in the marital estate.*

3. *Whether the District Court erred by not considering wife's contributions as a homemaker when dividing the marital estate.*

We affirm in part, reverse in part, and remand for further proceedings.

¶3 The parties, Megen and Joshua Tripp (Josh), married in 1997 and had five children over the course of the marriage. At the time of trial, the children were 18, 15, 13, 11, and 8 years old, respectively. The 11 year old child has special needs requiring extra care. By mutual agreement of the spouses, Megen stayed at home and took care of the children for the entirety of the marriage, while Josh worked to support the family. Megen currently has a high school education, and her employment history is limited to occasional periods of waiting tables part-time.

¶4 While the parties were married, Josh was seriously injured on the job and received a $206,800 settlement that was placed in a trust to pay future medical bills associated with his

injury. The trust eventually invested all of the money in Torrent Technologies, Inc. (Torrent Stock), which was valued at $250,582 at the time of trial.

¶5    Josh petitioned for dissolution March 9, 2012, and Megen responded March 29, 2012. Josh filed his preliminary declaration of disclosure April 3, 2012. Megen did not make her preliminary disclosures within the 60-day period required by § 40-4-252, MCA. The parties briefly reconciled in July 2012 and held the dissolution proceedings in abeyance. On October 18, 2012, Josh filed a notice of failed reconciliation and the dissolution proceedings resumed.

¶6    On October 18, 2012, Megen's counsel withdrew. On October 25, 2012, substitute counsel filed a notice of appearance. Megen's new counsel immediately moved to have Josh pay Megen's attorney's fees and served discovery requests. In response to the discovery requests, Josh moved for a protective order. In his brief in support of the motion for a protective order, Josh pointed out numerous problems with the discovery requests and characterized the tactics of Megen's new counsel as "dilatory."

¶7    On November 5, 2012, counsel for Megen issued several subpoenas duces tecum to various third parties, apparently seeking to substantiate Megen's claims that Josh was hiding, transferring, or dissipating marital assets. On January 22, 2013, Josh filed a motion to compel production of copies of the subpoenas Megen had issued, as well as any documents obtained from the parties subpoenaed.

¶8    On January 23, 2013, Josh served Megen his first set of discovery requests. In particular, Josh sought information about an inheritance Megen was expected to receive from her father's estate. On April 30, 2013, Josh served a second set of discovery requests on

3

Megen. On May 20, 2013, Josh filed a motion to compel responses to his first set of discovery requests. On May 24, 2013, Megen moved for an order of protection from Josh's first discovery requests.

¶9 On July 1, 2013, Megen filed an unopposed motion to extend all filing deadlines. According to the motion, Megen's counsel had been in a car accident and was "unavailable to meet response deadlines." The District Court reset the trial for September 23, 2013, and set an off-the-record hearing for all pending motions.

¶10 On August 13, 2013, after the hearing on all pending motions, the District Court ordered: 1) the parties were to exchange all information gathered as a result of subpoenas duces tecum and to inform the other party in advance if any further subpoenas were to be issued; 2) Megen was to disclose her attorney's fees; 3) Megen was to disclose her employment status, wages and benefits by September 1, 2013, and serve her preliminary financial disclosures by September 1, 2013; and 4) Megen was to respond to Josh's discovery requests by September 1, 2013.

¶11 On September 5, 2013, Josh filed an emergency motion for discovery sanctions based on Megen's failure to comply with the District Court's order that she make preliminary disclosures, disclose all information gathered from her subpoenas, and respond to Josh's discovery requests by September 1, 2013. The motion requested that the District Court sanction Megen by 1) striking Megen's maintenance claim; 2) striking Megen's attorney's fees claim; 3) precluding Megen from seeking an equitable share of the Torrent Stock; 4) precluding Megen from challenging the amount of child support; and 5) awarding Josh attorney's fees incurred in connection with the motion for sanctions. The District Court

4

entered an expedited briefing schedule requiring Megen to respond to Josh's motion for discovery sanctions by September 16, 2013.

¶12 On September 10, 2013, Megen filed a motion to continue the trial, again citing counsel's traffic accident and claiming injuries from the accident were causing counsel cognitive problems. Josh objected to the continuance, noting that Megen still had not responded to discovery. In an order dated September 12, 2013, the District Court granted Megen's motion to continue, withdrew the expedited briefing order, and reset the trial date to November 19, 2013. The order also made September 23, 2013, the new deadline for Megen to respond to discovery requests, serve preliminary disclosures, and serve any information gained from her subpoenas.

¶13 On September 18, 2013, Megen responded to Josh's motion for discovery sanctions, arguing that the doctrine of unclean hands prevented Josh from seeking sanctions based on a variety of allegations that Josh had misappropriated marital assets and taken documents from the marital residence that were responsive to Josh's discovery requests. Megen's response further alleged that Josh was committing fraud regarding the marital assets and that Josh's motion for discovery sanctions was a violation of Rule 11 of the Montana Rules of Civil Procedure. Megen's response contained other vague and unsubstantiated claims, such as claims that Josh already possessed the discovery and information he sought, and that Megen's reasons for non-compliance with discovery deadlines had already been addressed in previous briefs to the District Court. In his reply brief, Josh pointed out that in the discovery hearing, Megen's counsel represented to the District Court that the failure to serve discovery responses and preliminary disclosures was an administrative oversight and that counsel was

5

otherwise puzzled as to why her client had not yet produced the requested information and documents.

¶14    On September 23, 2013, Megen filed a notice of compliance stating that preliminary disclosures, an invoice for attorney's fees, and information about her income had been served on Josh.

¶15    On October 2, 2013, the District Court entered an order stating:

> Petitioner has filed a Motion for Discovery. Respondent has filed her response and Petitioner has filed his reply. After a review of the file and briefs, IT IS HEREBY ORDERED that Petitioner's Motion for discovery Sanctions is granted.
>
> .    .    .
>
> Petitioner shall filed [sic] his Memorandum of Attorney's Fees and Costs within thirty (30) days of the date of this Order. Any objections must be filed within thirty (30) days of the date of this Order. Additional attorney's fees may be awarded for positions not well-founded in fact or law (i.e., general objections without factual support). In the event objections are filed, this matter shall be set for further hearing on attorney's fees and costs.

Megen apparently interpreted the portion of the order regarding objections to attorney's fees and costs as an invitation to object to the order for sanctions itself, as she filed a document titled "Objection to Sanctions" on November 1, 2013. The objection argued that the District Court's September 12, 2013 order extending the deadline for Megen to serve discovery on Josh to September 23 mooted Josh's September 5 motion for discovery sanctions. Megen's objection further argued that she met the District Court's deadline for making her preliminary disclosures and that she could not provide the documents obtained from her subpoenas because Josh took all of the documents from the marital residence. Josh filed a response to Megen's objection, noting that Megen's objection was effectively a motion to

6

reconsider, and arguing such motions are not permitted under Montana law. The District Court did not rule on Megen's objection.

¶16    At trial, Josh testified that he believed Megen's father's estate consisted of numerous pieces of real property in Missoula and the Bitterroot Valley collectively worth millions, but that he was not seeking any portion of her inheritance. He testified that he sought information about the inheritance only to establish that Megen was "not penniless." Megen testified that she and her five siblings were to divide 30% of the estate between the six of them. She further testified that distribution of the estate was hampered by disputes over who would get which properties, as well as claims on the estate for unpaid taxes. She claimed she had no idea what the value of her share would likely be or when she would receive it.

¶17    After trial, the District Court adopted Josh's proposed findings of fact and conclusions of law verbatim. In the findings of fact and conclusions of law, the District Court awarded half the value of the capital gains on the Torrent Stock to Megen. The District Court distributed the marital home to Josh based on the fact the house was worth less than the mortgage owed on it, and Megen had no ability to pay either the monthly mortgage payment of $2,300, or the amount by which the mortgage exceeded the value of the home. Megen was given 90 days to vacate the home. Based on the discovery sanction striking Megen's maintenance claim, the District Court made no findings of fact or conclusions of law regarding maintenance. The District Court adopted the parties' stipulated parenting plan, under which Megen would be the primary caretaker of the children and determined Josh would pay Megen $2,379 per month in child support. The amount of child support was

7

based on calculations made by an expert jointly engaged by the parties who reviewed all relevant financial information of the parties.

¶18 *1. Whether the District Court abused its discretion when imposing discovery sanctions.*

¶19 We review a district court's imposition of sanctions under Rule 37, M. R .Civ. P., for an abuse of discretion. *Maloney v. Home & Investment Center, Inc.*, 2000 MT 34, ¶ 27, 298 Mont. 213, 994 P.2d 1124 (citation omitted). We consider whether the trial court in the exercise of its discretion "acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." *In re Perry*, 2013 MT 6, ¶ 15, 368 Mont. 211, 293 P.3d 170 (citation and brackets omitted).

¶20 Although the District Court's order does not list any sanctions, the order granted Josh's motion without any qualification. Thus, all of Josh's requested sanctions were imposed—specifically 1) Megen's maintenance claim was struck; 2) Megen's attorney's fees claim was struck; 3) Megen was precluded from seeking an equitable share of the Torrent Stock; 4) Megen was precluded from challenging the amount of child support; and 5) Josh was awarded attorney's fees incurred from the motion for sanctions. On appeal, Megen argues broadly that the sanctions amounted to a default judgment. Her arguments, however, only address the sanctions striking her maintenance claim and precluding her from seeking an equitable share of the Torrent Stock, and therefore we confine our discussion to those sanctions.

¶21    We note at the outset that Megen argues on appeal that the District Court's choice of discovery sanctions resulted in Megen's eviction from the marital residence. The record does not support this argument. The District Court awarded the house and its attendant debt to Josh solely based on the fact that Megen would be unable to make the monthly $2,300 mortgage payments and the fact the house was worth less than the amount owed on it. Megen does not dispute those facts and does not show any connection between the discovery sanctions and the distribution of the residence to Josh. The discovery sanctions did not preclude Megen from arguing the proper distribution of the residence or presenting evidence related to its value. Thus, we will not address this argument further.

¶22    The remainder of Megen's argument is that the discovery sanctions unjustly prevented Megen from requesting maintenance or an equitable share of the Torrent Stock. Regarding the stock, we note that it was bought exclusively with proceeds from a personal injury claim made solely by Josh. The claim resulted in a cash settlement that was placed in an irrevocable trust devoted to paying Josh's future medical bills resulting from his injury. At trial, Josh testified that he had already undergone numerous surgeries to address the lingering consequences of the injury and expected to incur future medical bills in excess of the trust's assets. Megen did not dispute any of those facts. Josh nonetheless requested that Megen be awarded half of the amount by which the settlement proceeds had increased in value since they were invested. At the time of trial, the trust had increased by approximately $44,000 since the settlement proceeds were invested. Megen was awarded half ($22,000) of that increase.

¶23     As Josh rightly points out, it would have been difficult, if not impossible, for Megen to be awarded more of the value of the stocks given that the stocks were purchased solely with the proceeds of his personal injury claim and will be used only to provide for Josh's future medical needs. *See In re Marriage of Baker*, 2010 MT 124, ¶ 35, 356 Mont. 363, 234 P.3d 70 (noting husband did not contribute to the value or receipt of personal injury settlement received by wife). In light of the fact she received half the value of the stock's gains, we conclude that preventing Megen from asserting a claim for an equitable share of the stock did not prejudice her, and accordingly was not an abuse of discretion.

¶24     What remains is Megen's argument that the District Court abused its discretion when it sanctioned her for her discovery abuses by precluding her from asserting a claim for maintenance. In assessing the propriety of discovery sanctions imposed pursuant to Rule 37(b) of the Montana Rules of Civil Procedure, we apply a three-part test. We consider whether the consequence inflicted via the sanction: 1) relates to the extent and nature of the actual discovery abuse; 2) relates to the extent of the prejudice to the opposing party which resulted from the discovery abuse; and 3) is consistent with the consequences expressly warned of by the District Court, if a warning was actually issued. *Culbertson-Froid-Bainville Health Care v. JP Stevens & Co.*, 2005 MT 254, ¶ 14, 329 Mont. 38, 122 P.3d 431, (*citing Smith v. Butte-Silver Bow County*, 276 Mont. 329, 339–40, 916 P.2d 91, 97 (1996)). In addition to these three factors, we will consider a party's disregard of the court's orders and authority. *McKenzie v. Scheeler*, 285 Mont. 500, 516, 949 P.2d 1168, 1178 (1997).

¶25     We conclude that the first prong is satisfied because Megen's discovery abuses were substantial. The second prong, however, is not met as to the sanction striking Megen's

10

maintenance claim because Josh has not identified any information relevant to determination of maintenance that Megen did not provide him. The third prong of the analysis is inapplicable here because the District Court gave no warning. *See Culbertson-Froid-Bainville*, ¶ 15 (district court is not required to give a warning, only to issue sanctions consistent with any warnings actually given).

¶26 The circumstances show that the nature and extent of Megen's failure to provide initial financial disclosures and discovery responses relate to the sanction of precluding Megen from seeking maintenance. Megen's discovery abuses were substantial. She failed to make initial disclosures until over a year after they were due and ignored the District Court's first order requiring her to provide them by September 1, 2013. She never provided any of the information gathered from third parties, and never responded to discovery requests despite the District Court's order requiring her to do so. Based on those facts, we conclude that the sanctions related to the nature and extent of the discovery abuses.

¶27 Regarding the second prong of the sanction analysis, we conclude the sanctions were not sufficiently related to the prejudice Josh suffered as a result of the discovery abuses. Below and on appeal, Josh has argued that he suffered prejudice because he could not assess the basis for, or develop a defense against, Megen's maintenance claim without discovery from Megen. However, Josh has not identified any information he would have needed to assess or defend against Megen's maintenance claim that was not provided to him.

¶28 The record reflects that Megen did provide preliminary disclosures and basic income information within the second time limit set by the District Court. Those disclosures came over a year after they were due, and after the District Court's first deadline to respond, but

11

were still provided on September 23, 2013, nearly a month before the November 19 trial date. Under § 40-4-252, MCA, preliminary disclosures must include all assets and liabilities of the party making the disclosure, as well as a complete income and expense declaration. Those disclosures include all of the information known only to Megen that would be necessary to determine maintenance, and Josh does not argue that the disclosures were incomplete. The remainder of the information the court must consider when determining maintenance would necessarily have been known to Josh—e.g., the length of the marriage, the standard of living established during the marriage, or the ability of the spouse from whom maintenance is sought to meet his own needs while meeting those of the spouse seeking maintenance. *See* § 40-4-203, MCA (listing facts relevant to determining maintenance).

¶29 Josh points out that Megen never provided any of the information she gathered as a result of her subpoenas to third parties and never responded to his discovery requests. However, Josh does not assert that any of that information related to Megen's maintenance claim. As mentioned before, Megen sought that information to establish that Josh was hiding or dissipating marital assets. Apparently none of the information supported her theory that Josh was hiding or dissipating marital assets given that she didn't seek to introduce any of that information at trial. Thus, we see no evidence that the lack of the subpoenaed information prejudiced Josh. Further, Josh has not directed our attention to any information that would be relevant to Megen's maintenance claim that would have been responsive to his discovery requests and was not included in the preliminary disclosures.

12

¶30 The only conceivable prejudice to Josh would have resulted from his inability to determine the value of Megen's inheritance from her father. Were Megen to receive a substantial inheritance, it may well affect a maintenance determination. However, the District Court initially excused Megen from providing information on the inheritance when it decided that it would make its own inquiry into the status of the probate case involving Megen's father's estate. The District Court later reversed that decision and decided to determine the issue at trial. Josh disclaimed any portion of the inheritance at trial, making the issue moot for purposes of dividing the marital estate. Megen testified at trial that she had no means of estimating when she would receive her inheritance or what its worth would be. Josh does not dispute the accuracy of her testimony. On remand, Megen would be required to disclose the value of the inheritance when it became known to her, and receiving the inheritance may be grounds for Josh to seek an adjustment of any maintenance awarded if Megen receives a substantial inheritance.

¶31 In sum, the sanction striking Megen's maintenance claim was not related to the prejudice Josh suffered as a result of Megen's discovery abuses. Absent prejudice to Josh, we conclude that it was an abuse of discretion to impose such a harsh sanction. The other sanctions were sufficient to penalize Megen for her discovery abuses and deter others from engaging in similarly dilatory practices. Given that Megen has very little work history, education, or career prospects and is the primary caretaker for five children, one of them with special needs, striking Megen's maintenance claim was too harsh a sanction in the absence of prejudice to Josh.

¶32     *2. Whether the District Court erred by not including proceeds from Josh's personal injury claim in the marital estate.*

¶33     Megen's contention here is erroneous.  The District Court did include Josh's personal injury settlement in the marital estate.  As discussed above, Megen received half of the increase in value of the proceeds of Josh's personal injury settlement.  This appears an equitable distribution and we see nothing suggesting the District Court abused its discretion in awarding that amount to Megen and the remainder to Josh.  *See In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67 ("[W]e will affirm the district court's distribution of marital property unless we find that the district court abused its discretion.").

¶34     *3. Whether the District Court erred by not considering Megen's contributions as a homemaker when dividing the marital estate.*

¶35     We review a district court's distribution of marital property for an abuse of discretion.  *In re Marriage of Williams*, ¶ 14.  Section 40-4-202(1), MCA, requires the district court to consider the contributions of a spouse as a homemaker when determining the appropriate distribution of a marital estate.  Megen contends that the District Court erred by failing to consider her contributions as a homemaker, resulting in all assets being distributed to Josh.

¶36     While the District Court did fail to consider, or even mention, Megen's contributions as a homemaker, her contention that this resulted in an inequitable distribution of the marital estate is not supported by the record.  When Megen argues "all the assets were given to Josh," it appears she is referring to the marital residence and the stocks.  As discussed above, however, the residence and attendant debt are a net liability which Megen would be unable to afford even with substantial maintenance, and she received an equitable portion of the value

14

of the stocks given the circumstance of Josh's ongoing medical needs. Thus, the only asset in the marital estate she might have been deprived an equitable share in is the personal property. Our review of the record, however, shows the vehicles, furniture, and other personal property was split roughly equally between the two parties. Thus, Megen's claim that "all the assets were given to Josh" is incorrect, and Megen has not identified how the division of any of the personal property was inequitable—nor for that matter does our own review of the record reveal any evidence that her distribution was inequitable. While the District Court did not consider Megen's contributions as a homemaker, we see no evidence that the District Court's failure resulted in any prejudice to Megen that would entitle her to relief.

¶37 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The issues in this case are ones of judicial discretion and it is clear that only the sanction striking Megen's maintenance claim was an abuse of discretion. We reverse the District Court's imposition of the sanction striking Megen's maintenance claim but affirm imposition of the remaining sanctions. The case is remanded for further proceedings consistent with this opinion.


/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER

15

Justice Laurie McKinnon, dissenting.

¶38    I would reverse the Judgment of the District Court in its entirety and remand for a new trial.

¶39    On October 2, 2013, the District Court issued an Order granting Josh's Motion for Discovery Sanctions.  The Order did not contain any findings, analysis, or rationale establishing the basis for imposition of the numerous sanctions.  The sanctions essentially amounted to a default judgment against Megen—striking Megen's claims for maintenance and attorney fees, and precluding her from seeking an equitable share of stock acquired during the marriage or challenging child support. The failure of the court to provide reasons, findings, or any analysis underlying the imposition of sanctions prevents this Court from conducting a meaningful review of whether the sanctions amounted to an abuse of discretion.  In particular, we have no findings or rationale to aid our decision to affirm or reverse any individual sanction.  By addressing the sanctions in a piecemeal fashion, we change the apportionment of particular property which alters the overall equitable apportionment of the entire estate.  We have previously recognized that § 40-4-202, MCA, gives the court broad discretion in equitably apportioning the *entire* marital estate.  *In re Marriage of Funk*, 2012 MT 14, 363 Mont. 352, 270 P.3d 39.

¶40    In assessing the propriety of discovery sanctions imposed pursuant to M. R. Civ. P. 37, this Court examines the relationship between the sanction and (1) the extent and nature of the discovery abuse; (2) the prejudice to the opposing party; and (3) whether the court issued an express warning of the potential imposition of a sanction.  *Smith v. Butte-Silver Bow*

16

*County*, 276 Mont. 329, 339-40, 916 P.2d 91, 97 (1996). In these proceedings, the court held two off-record discovery conferences in response to Josh's motions to compel. We have no knowledge of what occurred during these off-record conferences. The court issued its order imposing sanctions without a hearing and presumably based on these off-record conferences and the pleadings. Absent findings and an analysis of why the court imposed a particular sanction, this Court cannot assess whether there was an abuse of discretion in the imposition and choice of sanctions by the District Court. In particular, if the basis for the sanction had been set forth, together with an analysis of the factors enunciated in *Smith*, then this Court could meaningfully assess the impact of the sanctions on the parties' children. More importantly, this Court could evaluate whether the District Court's choice of the discovery sanction was an abuse of discretion in light of its ultimate obligation to equitably distribute the estate and provide for the best interests of the parties' five children.

¶41     I also believe the Court has incorrectly cited our decision in *In re Marriage of Baker* as a basis to deny Megen a portion of the stock. In that case, while we held that a spouse is not entitled to an equitable share of proceeds from the other spouse's personal injury claim and observed that the husband had not contributed to the value, this was in a context in which we found that the personal injury settlement had been dissipated over the course of the marriage and that the property subject to apportionment no longer existed at the time of dissolution. *Baker*, ¶ 34. It was not a part of the marital estate because it no longer existed, not because the husband did not contribute. There we reaffirmed that a court cannot distribute non-existent property. *Baker*, ¶ 33. *Baker* does not stand for the general proposition that a personal injury settlement is not part of the marital estate. Indeed, we have

clearly stated that the "District Court is tasked with the overarching obligation to equitably apportion all property belonging to either or both parties however and whenever acquired, without regard to title, and without regard to marital misconduct." *Funk*, ¶ 34.

¶42 Here, Josh received a personal injury settlement which compensated him for lost earnings, medical bills, future injuries and hardship endured during the period of the marriage. Megen maintains that she cared for Josh and supported the family when Josh was injured. Eventually, the funds were converted to stock that was placed in the names of both Megen and Josh. *Funk* establishes that everything owned jointly or by either spouse must be equitably apportioned. *Funk*, ¶ 34. Our decision today not only misconstrues *Baker*, but stands in direct conflict with *Funk*. *See also Marriage of Caras*, 2012 MT 25, ¶ 33, 363 Mont. 32, 270 P.3d 48.

¶43 Lastly, in light of the particular facts of these proceedings, it is especially important for the court to have demonstrated it considered Megen's contribution to the family as a homemaker. Megen did not graduate from high school and stayed at home to raise the parties' five children, one of whom has special needs. Absent from the court's findings is any consideration of Megen's contribution to the home and family. In equitably apportioning property, the "court must additionally consider the contributions of the other spouse to the marriage including the nonmonetary contribution of a homemaker; the extent to which such contributions have facilitated the maintenance of this property; and whether or not the property division serves as an alternative to maintenance." *Funk*, ¶ 34. In this case, as in *Funk*, the court's decision must reflect that each of these factors was considered.

¶44 I realize the upheaval and unrest a new trial will cause to Josh, Megen, and their children, particularly their special-needs child, A.T., who craves stability. I also can appreciate that the District Court had a discovery dispute that needed to be not only managed, but sanctioned. However, in the context of a dissolution and parenting proceeding where the sanction may impact the parties' children, it is particularly important that this Court understand the reasons for the District Court's actions so that we may correctly assess the severity of the sanction imposed in light of these considerations. These proceedings have as their ultimate purpose the adoption of a parenting plan and apportionment of the marital estate which is fair and, importantly, in the best interests of the children. Because I am not convinced the District Court achieved this goal, I would reverse and order a new trial. I think we are mistaken if we believe we can salvage the case in a piecemeal fashion as we attempt to do today.

/S/ LAURIE McKINNON